IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEANNA THOMAS, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 5:19-cv-1418 |
| vs. | § | |
| | § | **COMPLAINT** Jury Trial |
| GENERAL MOTORS FINANCIAL | § | Demanded |
| COMPANY, INC. DBA GM | § | |
| FINANCIAL AND PRG RECOVERY & | § | |
| HOLDINGS, LLC, | § | |
| Defendants. | § | |

## NATURE OF ACTION

1. Plaintiff Deanna Thomas brings this action against Defendants General Motors Financial Company, Inc. dba GM Financial ("GM"), and PRG Recovery & Holdings, LLC ("PRG"), pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Article 9 of the Texas Uniform Commercial Code, TEX. BUS. & COM. CODE § 9.101 *et seq.*.

## JURISDICTION, VENUE, AND STANDING

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendants transact business in this district.

4. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may

1

'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992).

5.  "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6.  "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition." *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

## THE FAIR DEBT COLLECTION PRACTICES ACT

7.  Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

8.  To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute [and] proof of one violation is sufficient to support summary judgment for plaintiffs on their federal claim" *Hartman v. Meridian Fin. Servs., Inc.*, 191 F. Supp. 2d 1031, 1046 (W.D. Wis. 2002).

9.     In order to offer the greatest protections to consumers, "the FDCPA is a strict liability statute – a collector 'need not be deliberate, reckless, or even negligent to trigger liability." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009); *see also Anderson v. Credit Bureau Collection Services, Inc.*, 422 Fed. Appx. 534, 539 (7th Cir. 2011) ("This means [Plaintiff] is entitled to sue to enforce [the FDCPA's] provisions, even the "highly technical" ones . . .").

10.     "Because the FDCPA is designed to protect consumers, it is liberally construed in favor of consumers to effect its purpose." *Ramirez v. Apex Fin. Mgmt., LLC*, 567 F. Supp. 2d 1035, 1040 (N.D. Ill. 2008).

*11.*     "[C]laims against debt collectors under the FDCPA are to be viewed through the eyes of the 'unsophisticated consumer' . . . the standard is low, close to the bottom of the sophistication meter." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); *see also Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir. 1994) ("an unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness.").

12.     For the purpose of 15 U.S.C. § 1692f(6), a "debt collector" also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

13.     The FDCPA prohibits such persons, such as tow operators or repossession companies, from taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right or intention to take possession of the property. 15 U.S.C. § 1692f(6).

## THE UNIFORM COMMERCIAL CODE

14. "Article 9 of the UCC is a comprehensive statutory scheme governing the rights and relationships between secured parties, debtors, and third parties." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007).

15. Article 9 serves "to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." *Haas' Estate v. Metro–Goldwyn–Mayer, Inc.*, 617 F.2d 1136, 1140 (5th Cir. 1980).

16. After a default, the UCC gives secured parties the right to repossess collateral. *See* TEX. BUS. & COM. CODE § 9.609.

17. There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if a secured party finds that it cannot get possession without committing a breach of the peace, it must stay its hand, and resort to the law. *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 152 (Tex. 1992).

18. This is so because the preservation of peace, "is of more importance to society than the right of the owner of a chattel to get possession of it." *Willis v. Whittle,* 82 S.C. 500, 64 S.E. 410 (1909); *see also Singer Sewing Mach. Co. v. Phipps,* 49 Ind.App. 116, 94 N.E. 793 (1911) (quoting 3 William Blackstone, Commentaries *4) ("[T]his natural right of recaption shall never be exerted, where such exertion must occasion strife . . . or endanger the peace of society.").

## PARTIES

19. Ms. Thomas is a natural person who at all relevant times resided in the State of Texas.

20. Ms. Thomas is allegedly obligated to pay a debt.

21. Ms. Thomas is a "consumer" as defined by 15 U.S.C. § 1692a(3).

22. GM is a company that regularly purchases consumer paper in the form of automobile loans.

23. GM is a "secured party" as defined by TEX. BUS. & COM. CODE § 9.102(a)(73).

24. PRG is an entity that at all relevant times was acting as a repossession agent working at the behest of GM.

25. At all relevant times, PRG was an entity using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

26. PRG is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

27. On or about July 3, 2015 Ms. Thomas purchased a Chevrolet Malibu (the "Vehicle") from non-party, Lone Star Chevrolet.

28. Ms. Thomas purchased the Vehicle for her own personal family and household use.

29. The Vehicle constitutes "consumer goods" as defined by TEX. BUS. & COM. CODE § 9.102(a)(23).

30. Ms. Thomas could not afford to purchase the vehicle outright, so she purchased it on credit.

31. In connection with the transaction Ms. Thomas executed a loan agreement in Lone Star Chevrolet's favor (the "Contract").

32. As part of the agreement, Plaintiff granted Loan Star Chevrolet, and its assignees, a security interest in the Vehicle.

33. The Vehicle constitutes "collateral" as defined by TEX. BUS. & COM. CODE § 9.102(a)(12).

34. After the Contract was consummated, it was assigned to GM.

35. Thereafter, GM engaged its repossession agent, PRG, to repossess Ms. Thomas's vehicle.

36. On May 2, 2019, Ms. Thomas and her vehicle were at her friend's apartment complex in San Antonio, Texas when PRG arrived to repossess the Vehicle.

37. Ms. Thomas noticed PRG's arrival.

38. Before PRG's personnel could take possession or control of the Vehicle, Ms. Thomas ran out and immediately confronted PRG's personnel and protested the repossession loudly and unequivocally.

39. Ms. Thomas jumped into the vehicle and refused to leave.

40. Instead of ceasing its attempted repossession and trying again later, PRG lifted the vehicle and towed it away with Ms. Thomas inside.

41. PRG drug the vehicle, with Ms. Thomas inside, screaming, crying, honking the vehicle's horn, and applying the Vehicle's brakes.

42. PRG drug the vehicle and Ms. Thomas out of her friend's apartment complex and called the police for assistance with its repossession.

43. Thereafter, San Antonio police officers, Noah Ballard and Ashley Montero arrived on the scene.

44. The officers threatened Ms. Thomas with arrest and forced her to turn over the vehicle to PRG.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692f(6)(A)
## PRG

45. Ms. Thomas repeats and re-alleges each factual allegation contained above.

46. Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." TEX. BUS. & COM. CODE § 9.609(b)(2).

47. However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id*.

48. A repossession agent breaches the peace if he continues with a repossession over a consumer's protest. *See Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), *dismissed* (Apr. 3, 1974) (because consumer protested repossession secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *First & Farmers Bank of Somerset,*

*Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank & Tr. Co. of Ravenna*, 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988)) (" '[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections.' ").

49. Ms. Thomas loudly, and unequivocally protested PRG's repossession.

50. Once Ms. Thomas protested the repossession, PRG lost the right to continue with the repossession.

51. Nonetheless, PRG continued with its repossession and thereby breached the peace.

52. Additionally, PRG enlisted the help of law enforcement officers to effectuate its repossession and thereby breached the peace.

53. Additionally, PRG breached the peace by towing the Vehicle while Ms. Thomas occupied it.

54. By continuing with their repossession after it lost the right to do so, PRG violated 15 U.S.C. § 1692f(6)(A) by taking non-judicial action to effect dispossession of Ms. Thomas's property where the property was exempt by law from such dispossession.

WHEREFORE, Ms. Thomas prays for relief and judgment, as follows:

a) Adjudging that PRG violated 15 U.S.C. § 1692f(6)(A);

8

b) Awarding Ms. Thomas statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Ms. Thomas actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Ms. Thomas reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e) Awarding Ms. Thomas pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

## COUNT II
## VIOLATION OF TEX. BUS. & COM. CODE § 9.609(b)(2)
## GM

55. Ms. Thomas repeats and re-alleges each factual allegation contained above.

56. Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." TEX. BUS. & COM. CODE § 9.609(b)(2).

57. However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id*.

58. A repossession agent breaches the peace if he continues with a repossession over a consumer's protest.

59. Secured creditors have a nondelegable duty not to breach the peace when they repossess secured collateral. The courts may find them liable for the acts of independent contractors who breach the peace in the course of repossessing secured collateral. *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 154 (Tex. 1992); *see also Doucette v. Belmont Sav. Bank*, No. ESCV20161596D, 2017 WL 2427566, at *2 (Mass. Super. Apr. 14, 2017); *Binion v.*

*Fletcher Jones of Chicago, Ltd.*, 2014 IL App (1st) 131710-U, ¶ 19; *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, 956 P.2d 858; *DeMary v. Rieker*, 302 N.J. Super. 208, 695 A.2d 294 (App. Div. 1997); *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 55 (Mo. Ct. App. 1996); *Mauro v. Gen. Motors Acceptance Corp.*, 164 Misc. 2d 871, 876, 626 N.Y.S.2d 374, 377 (Sup. Ct. 1995); *Clark v. Assocs. Commercial Corp.*, 877 F. Supp. 1439, 1448 (D. Kan. 1994); *Hester v. Bandy*, 627 So. 2d 833, 843 (Miss. 1993); *Sammons v. Broward Bank*, 599 So. 2d 1018, 1019 (Fla. Dist. Ct. App. 1992); *GM v. Owens*, 820 S.W.2d 748, 752 (Tenn. Ct. App. 1991); *Massengill v. Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind. Ct. App.1990); *Nichols v. Metro. Bank*, 435 N.W.2d 637, 640 (Minn. Ct. App. 1989); *Gen. Fin. Corp. v. Smith*, 505 So. 2d 1045, 1047 (Ala. 1987); *Henderson v. Security Nat'l Bank,* 72 Cal. App.3d 764, 140 Cal. Rptr. 388, 390–91 (1977).

60. GM's repossession agent, PRG, breached the peace by continuing its repossession in the face of Ms. Thomas's loud, ardent, and unequivocal protest and by towing the vehicle while Ms. Thomas occupied it.

61. Additionally, PRG enlisted the help of law enforcement officers to effectuate its repossession and thereby breached the peace.

62. GM violated TEX. BUS. & COM. CODE § 9.609(b)(2) when its repossession agents, PRG, breached the peace to repossess Ms. Thomas's Vehicle.

WHEREFORE, Ms. Thomas prays for relief and judgment, as follows:

    a) Adjudging that GM violated TEX. BUS. & COM. CODE § 9.609(b)(2);

    b) Awarding Ms. Thomas statutory damages, pursuant to TEX. BUS. & COM. CODE § 9.625(c)(2);

c) Awarding Ms. Thomas actual damages, pursuant to TEX. BUS. & COM. CODE § 9.625(c)(1);

d) Awarding Ms. Thomas pre-judgment and post-judgment interest as permissible by law; and

e) Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

63. Ms. Thomas is entitled to and hereby demands a trial by jury.

Dated: December 6, 2019

Respectfully submitted,

/s/ Russell S. Thompson IV
Russell S. Thompson IV
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206
Telephone:	602-388-8898
Facsimile:	866-317-2674
rthompson@ThompsonConsumerLaw.com